Hitchcock, J.,
dissenting. Not concurring in the opinion expressed by the majority of the Court, I deem it proper to state the reasons which have brought me to a different conclusion.
The original action in this case is an action of debt upon bond. The bond was intended to be in conformity with the *567 5th section of the act of the 5th of March, 1839, “ to abolish the Board of Canal Commissioners, and to revive the Board Public Works; ” Swan’s St. 760. It bears date on the 1st of April, 1839, and was approved on the 20th day of the same month by the Governor of the State. The defendants are sureties in the bond for Timothy G Bates, principal. The com dition is “that whereas Timothy G. Bates, has been duly appointed and qualified, by the General Assembly of the State of Ohio, during its session of 1838 and 1839, as member of the Board of Public Works of the State of Ohio, for the term of four years. Now if the said Timothy G. Bates, shall faithfully discharge the duties of his said office, according to law, and shall faithfully account for all money entrusted to him as such officer, according to law, then and in that case this bond to be void, otherwise to be and remain in full force and virtue,” &c.
The declaration recites the appointment of Bates as member of the Board of Public Works for the term of four years, from and after the first day of April, 1839, that on the day last aforesaid he was designated by the Board as Acting Commissioner thereof; that afterwards he gave bond, with defendants as his sureties, and sets forth the substance of the bond and of the condition. It is further alleged that Bates, in virtue of his office, received large sums of money, to wit: the sum of fifty thousand dollars, that he has failed to disburse and account for said money, and that $5,582 84 remains in his hands, unaccounted for.
To this declaration there was a general demurrer, which was sustained in the Court of Common Pleas, and judgment entered in favor of the defendants. To reverse this judgment this suit is now prosecuted.
Although a variety of questions have been incidentally discussed in the present case, yet the question upon which the case turns, is narrowed down to this: did Bates, when he received the money, as stated in the declaration, receive it as a member of the Board of Public Works, or did he receive it in some other capacity. Counsel for defendants insist that although *568 he was a member of that Board, yet that he did not receive it suc'n member, but as an officer of a different character, that ’ . as Acting Commissioner of that Board, and such is the opinion of a majority of the Court. Or perhaps it is more proper to say that the simple question raised in the case is, whether the bond in controversy is a void instrument. It was intended to be a statutory bond, and by those who, at the time of its execution, administered the government of the State, was supposed to be in conformity with the statute upon the subject. This opinion, it seems to me, was well founded, and I am brought to this conclusion by a careful examination of the statute.
Before proceeding further, it may be well to remark, that there is no difference of opinion as to the law relative to sureties. They cannot be bound beyond the scope of their understanding. Yet in ascertaining the extent to which they are bound, the same regard must be had to the intention, as derived from the language used in an instrument, as is the case in the construction of all other instruments ; I Ohio Rep. 170 ; 5th do. 176. Nor does the fact that the condition of a bond is more comprehensive in its terms than is required by the statute, vitiate the instrument; 10 Ohio R. 51.
As before remarked, the ground of defence is that Bates, the principal, did not receive the money specified in the declaration as member of the Board of Public Works, but as Acting Commissioner ‘of that Board, and it is insisted that the office of member of the Board of Public Works, and of Acting Commissioner, are separate and distinct offices. And further, that under the law it was not required that a member of the Board, as such, should give bond, that a bond was to be given only by the Acting Commissioner. To me it seems that there is but one office, and that when the Legislature speak of Acting Commissioners, they have reference only to the duties to be performed by different members of tho Board,' and those duties must, under the law, be performed by members of the Board; None other than a member can be Acting Commissioner.
By the first section of the act of March 5th, 1839, a pre-ex *569 isting law, establishing a Board of Canal Commissioners, is re'pealed, and that Board abolished. (Swan’s Stat. 760.) ous to this time, the canals and other public works of the State had been under the charge of a board, sometimes called the Board of Canal Commissioners, sometimes the Board of Public Works. Some of the members of the Board were merely advisory members, others were denominated Acting Commissioners.
In the second section of the aforesaid'act, it is enacted, “ that for the purpose of promoting and maintaining a general system of internal improvement within this State, and of uniting all the various branches under the same supervisors and direction, there shall be created a Board of Public Works, consisting of five members, tobe appointed by joint resolution of the General Assembly, who shall be denominated the Board of Public Works,” &c. It is further provided that the Board shall upon their organization proceed to elect a President, who shall keep an office at Columbus, and “ that said Board shall have the power to fix the number of Acting Commissioners, not to exceed four of their number.”
The third section is as follows, “ the charge and superintendence of the canals of this State, of that part of the national road, which has been or may hereafter be completed, and received by the State, and all other works of internal improvement that have been or may be undertaken, in whole or in part, by the State, shall be and they are hereby vested in said Board of Public Works; which Board is hereby invested with all the powers, and required to perform all the duties, heretofore conferred upon the Board of Canal Commissioners, and superintendant of the national road, by the laws of the State now in force, and such other duties as may from time to time be in-joined upon it, by the present or any future Legislature, and shall from time to time present to the consideration of the General Assembly, such objects of internal improvement as they shall judge the public interest may require.”
*570 By the fifth section, the members of the Board are required to take the necessary oaths of office, and it is further required that before an Acting Commissioner shall be allowed to receive any money for disbursement, he shall give bond with security, &c.
Throughout the whole of this act the members of the Board of Public Works are spoken of, are treated as Commissioners, and in no part of it are any peculiar duties prescribed to be performed by those denominated Acting Commissioners. The general duties to be performed by the entire Board are specified, and all the members belong to, and constitute a part of the Board. For the superintendence of distinct parts of the works, different individuals must be designated, but in such superintendence the individual superintending, acts in no other capacity than as member of the Board. His authority is not derived from any appointment of the Board, but from his appointment by the General Assembly. All were in fact Acting Commissioners, if we except the President who was to keep his office at Columbus. The Board was constituted of five members, one of which was to be President, and power was given to this Board to “ fix the number of Acting Commissioners, not to exceed four of their own number.” The Board could fix the number, but if the number fixed was less than four, it had not power to say who should in fact be the Acting Commissioners. In this respect the Board was powerless. Looking at the statute in all its parts, I can have no doubt that the General Assembly intended, notwithstanding what is said in the second section, about fixing the number, that all the members of the Board, exclusive of the President, should be Acting Commissioners. It was so understood by the authorities of the State at the time, and therefore the bond now in suit was executed in the form in which it is set forth in the declaration. A member of the Board of Public Works, and an Acting Commissioner, as he was one and the same person, held but one and the same office.
*571 That it was the intention of the General Assembly that all the members of the Board, with the exception of the President, should be Acting Commissioners, is more fully manifested by the 12th section of the act, which provides that each one of the Acting Commissioners should receive a salary of fifteen hundred dollars per year, and the President a per diem allowance of three dollars while engaged in the duties of his office. But no compensation is provided for any member of the board who is neither President nor Acting Commissioner. Such compensation would undoubtedly have been provided had it not been well understood that ample provision was already made.
In pursuance of the intention of the General Assembly the four members of the Board of Public Works, appointed in March, 1839, proceeded to discharge their duties as Acting Commissioners. I infer this from the fact that at the next session of the General Assembly, that body enacted a law, of which the following is the 6th section, “ The General Assembly now in session, shall designate by joint resolution, three out of the four acting Commissioners, now in the service of the State, that shall be retained in office, with the term that each shall hold his appointment,” &c. (Swan’s Statutes, 764.)
Now, although the phraseology of this statute is somewhat obscure I can come to no other conclusion with respect to its meaning than such as is before stated. If I am correct in this it follows that Bates, the principal in the bond now in suit, was an Acting Commissioner, not in virtue of any appointment received from the Board of Public Works, but in virtue of his appointment as a member of that Board. He received no other appointment; by the law he could receive no other. There was in fact but one office. As a member of that Board he executed his bond, with the defendants as his securities. As a member of that Board he received the moneys of the State, and the defendants as his securities undertook that he should account for it. This he has failed to do, and it seems to me that upon every principle of law and justice, the defendants *572 as his securities, should in conformity with the legal effect of their undertaking, be made responsible for the defalcation. well understood the nature and extent of their undertaking, and they ought not to escape from its obligation by any mere technical objection.
In my opinion the Judgment of the Court of Common Pleas should be reversed.